Major General Ronald O. Harrison State of Florida Department of Military Affairs Office of the Adjutant General Post Office Box 1008 St. Augustine, Florida 32085-1008
Dear Major General Harrison:
You ask substantially the following question:
Does the Adjutant General have the authority to execute a contract with another state for the interstate use of equipment for drug interdiction?
In sum:
Section 250.535, Florida Statutes, authorizes the Adjutant General to enter into a mutual assistance and support agreement with a state that has lawfully enacted the Interstate Compact for Drug Interdiction. No provision, however, exists authorizing the Adjutant General to enter into such an agreement with a noncompact state.[1] In the absence of such a grant of authority, the Adjutant General's authority to enter into such agreements would be limited to that authorized by section 250.535, Florida Statutes.
You stated that the Florida National Guard (FLNG) is engaged in counterdrug activities pursuant to the Governor's Counterdrug Plan. In certain instances, military assets from other states are needed in Florida in connection with this mission and, conversely, Florida assets are needed by other states to support their counterdrug missions. For example, according to your letter, FLNG has control over a C-26 military aircraft, a federal asset assigned to FLNG, which has sensitive electronic surveillance equipment that other states occasionally will request to use.
Chapter 250, Florida Statutes, sets forth the state's military code and establishes the Florida Department of Military Affairs, which is composed of the military forces of the state, including FLNG.[2] The Governor is the commander in chief of the state militia,[3] while the Adjutant General is the Chief of the Department of Military Affairs and is, among other things, responsible for supervising all troops, arms and branches of the militia including their armament and supplies.[4]
Part II of Chapter 250, Florida Statutes, provides for an Interstate Compact on Drug Interdiction. The purpose of the compact is, among other things, to:
"* * *
(2) Permit the National Guard of this state to enter into mutual assistance and support agreements, on the basis of need, with one or more law enforcement agencies operating within this state, for activities within this state, or with a National Guard of one or more other states, whether said activities are within or without this state, in order to facilitate and coordinate efficient, cooperative enforcement efforts directed toward drug interdiction, counter-drug activities, and demand reduction.
(3) Permit the National Guard of this state to act as a receiving and responding state as defined within this compact to ensure the prompt and effective delivery of National Guard personnel, assets, and services to agencies or areas that are in need of increased support and presence.[5]
* * *"
Section 250.534, Florida Statutes, provides that the compact shall enter into force when enacted into law by any two states and thereafter shall be effective as to any other state upon its enactment.[6]
Section 250.535(5), Florida Statutes, states:
"The Adjutant General of this state, in order to further the purposes of this compact, may enter into a mutual assistance and support agreement with one or more law enforcement agencies of this state, including federal law enforcement agencies operating within this state, or with the National Guard of one or more other party states to provide personnel, assets, and services in the area of counter-drug activities and demand reduction, provided that all parties to the agreement are not specifically prohibited by law to perform said activities."[7]
The above statute addresses the Adjutant General's authority to enter into mutual assistance and support agreements with states that are party to the compact. No provision is made for such agreements with noncompact states.
An examination of the legislative history surrounding the adoption of the compact in 1993 indicates that in 1989 the Florida National Guard began a cooperative effort in drug interdiction with the federal government to prevent the import and sale of illegal narcotics within national boundaries. The Legislature subsequently enacted section 250.531, Florida Statutes, which provided that FLNG, when authorized or directed by the Governor, could assist federal law enforcement agencies in the interdiction of the import of controlled substances into the state.[8]
The staff analysis for Chapter 93-283, Laws of Florida, which adopted the Interstate Compact on Drug Interdiction, recognized that FLNG had entered into several informal memoranda of understanding with various states.[9] The legislation sought to formalize and acknowledge in law FLNG's practice after the Department of Military Affairs recommended that a more formalized and structured compact be provided by statute.[10] The Legislature, therefore, has now specified the manner in which FLNG may enter into such agreements.
Since the Legislature, with the enactment of section 250.535(5), Florida Statutes, has defined the authority of the Adjutant General to enter into mutual assistance and support agreements for drug interdiction, I cannot conclude that the Adjutant General's authority extends beyond that prescribed in the statute to encompass noncompact states. Where the Legislature has directed how a thing shall be done is, that is, in effect, a prohibition against its being done in any other way.[11] As Adjutant General, you may wish to consider seeking legislative clarification on this issue.[12] I would note, however, that under the current statutes it is the Governor, as Commander in Chief, who is authorized to order all or any part of the organized militia to provide extraordinary support to law enforcement upon request, and to provide humanitarian relief in situations for which it is uniquely qualified.[13] In addition, as noted supra, when authorized ordirected by the Governor, the Florida National Guard may assist federal law enforcement agencies in interdicting the importation of controlled substances into this state.[14] Pursuant to section250.47, Florida Statutes, no unit of the National Guard may go out of the state without first securing permission of the Governor.
Accordingly, I am of the opinion that while section 250.535, Florida Statutes, authorizes the Adjutant General to enter into a mutual assistance and support agreement with a state that has lawfully enacted the Interstate Compact for Drug Interdiction, no provision exists regarding the Adjutant General's authority to enter into such agreements with noncompact states. In the absence of such a grant of authority, the Adjutant General's authority to enter into such agreements would be limited to that authorized by section 250.535, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] You also ask about the Governor's power to delegate his authority to enter into such agreements. In the absence of a request from the Governor, this office is precluded from commenting upon the Governor's authority. See, s. 16.01(3), Fla. Stat. But see, s. 250.537, Fla. Stat. (nothing in compact prevents the Governor of a party state from delegating his or her responsibilities respecting National Guard provided such delegation is otherwise in accordance with law, except that a Governor shall not delegate the power to request assistance from another state). And see, s. 250.10(2)(h), Fla. Stat., stating that the Adjutant General shall perform such other duties as may be required of him by the commander in chief.
[2] See, ss. 250.02(2) and 250.05, Fla. Stat. And see, Art. X, s. 2, Fla. Const., providing for the state militia.
[3] See, Art. IV, s. 1, Fla. Const., and s. 250.06, Fla. Stat.
[4] Section 250.10, Fla. Stat.
[5] Sections 250.533(2) and (3), Fla. Stat.
[6] See, s. 250.534(1), Fla. Stat. Subsection (2) acknowledges that any party state may withdraw by enacting a statute repealing the same provided that no such withdrawal shall take effect until 1 year after the Governor of the withdrawing state gives notice in writing of such withdrawal to the Governors of all other party states. And see, s. 250.535(1)(i), Fla. Stat., defining "party state" as a state that has lawfully enacted the compact.
[7] See, s. 250.535(6), Fla. Stat., which prescribes what such an agreement must contain.
[8] See, Ch. 91-259, Laws of Florida.
[9] See, House of Representatives Committee on Community Affairs Final Bill Analysis Economic Impact Statement on HB 1925 (passed as Ch. 93-283, Laws of Florida), dated May 10, 1993; Senate Staff Analysis and Economic Impact Statement on SB 1970 (companion bill to HB 1925), dated March 17, 1993.
[10] See, House Staff Analysis, supra at p. 3, stating that "the compact offers a formalized acknowledgment of the operating conditions between the Guards of the participating states and protects the rights of guard personnel when performing duty in other states"; and Senate Staff Analysis, supra at p. 4, providing that "the compact would formalize and acknowledge in law the current practice of the guard of entering into such agreements with other states."
[11] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944);Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[12] See, s. 250.10(2)(l), Fla. Stat., stating that the Adjutant General may make such recommendations for needed legislation as he or she may deem proper.
[13] Section 250.06(4), Fla. Stat.
[14] See, s. 250.531, Fla. Stat.